```
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3   UNITED STATES OF AMERICA,        :
                                      :
 4   vs.                              :  DOCKET NUMBER
                                      :  1:18-CR-0487-SCJ-JFK
 5   EMANUEL GRAY,                    :
                                      :  ATLANTA, GEORGIA
 6             DEFENDANT.             :  NOVEMBER 16, 2018

 7
```

**8     TRANSCRIPT OF AUDIO RECORDED PRELIMINARY AND DETENTION HEARING**

**9                          PROCEEDINGS**

**10        BEFORE THE HONORABLE CATHERINE M. SALINAS**

**11              UNITED STATES MAGISTRATE JUDGE**

12

13

APPEARANCES OF COUNSEL:

14

    **FOR THE GOVERNMENT:**

15

    JOLEE PORTER
16    UNITED STATES ATTORNEY'S OFFICE

17

    **FOR THE DEFENDANT:**

18

    VICTORIA CALVERT
19    FEDERAL DEFENDER PROGRAM, INC.

20

21

22    *MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*
    *TRANSCRIPT PRODUCED BY:*

23

*OFFICIAL COURT REPORTER:*    *SHANNON R. WELCH, RMR, CRR*
24    *2394 UNITED STATES COURTHOUSE*
    *75 TED TURNER DRIVE, SOUTHWEST*
25    *ATLANTA, GEORGIA  30303*
    *(404) 215-1383*

**I N D E X   T O   P R O C E E D I N G S**

**WITNESS**                                                      **PAGE**

SPECIAL AGENT MEGAN PERRY

    Direct Examination
     by Ms. Porter                                          4

                   * * *

CERTIFICATE                                                        18

```
 1                    P R O C E E D I N G S

 2    (Atlanta, Fulton County, Georgia; November 16, 2018.)

 3              COURTROOM DEPUTY CLERK:  All rise.  Court is now in

 4    session, the Honorable Catherine Salinas presiding.

 5              THE COURT:  Good afternoon.  Y'all can be seated.

 6    We're back on Case Number 1:18-MJ-1100, the United States vs.

 7    Emanuel Gray.

 8              Counsel, will you state your appearances, please.

 9              MS. PORTER:  Good afternoon, Your Honor.  Jolee

10    Porter on behalf of the United States.

11              THE COURT:  Hello.

12              MS. CALVERT:  Good afternoon, Your Honor.  Victoria

13    Calvert on behalf of Mr. Gray.

14              THE COURT:  Hello, Ms. Calvert.  And hello, Mr. Gray.

15              THE DEFENDANT:  Hello.

16              THE COURT:  All right.  We're here -- we'll start

17    with the preliminary hearing.  And if I find there is probable

18    cause to support the arrest, we'll just move on to detention.

19    I don't mind if you -- if you tell me that is what you're doing

20    if we do both at the same time in terms of evidence.

21              MS. PORTER:  Yes, Your Honor.  We're just going to

22    put in a few things relating to detention beyond the

23    preliminary hearing.

24              THE COURT:  Well, then when she's cross-examining,

25    I'm going to give her a little bit more latitude as well then
```

1    if we're going to do it all at once.

2         MS. PORTER:  Yes, Your Honor.

3         THE COURT:  That's fine with me.

4         MS. PORTER:  The Government will call FBI Special

5    Agent Megan Perry to the stand.

6         THE COURT:  Come on up, Agent Perry.

7         COURTROOM DEPUTY CLERK:  Please raise your right

8    hand.

9              **(Witness sworn)**

10        COURTROOM DEPUTY CLERK:  If you would, please have a

11   seat and state your full name for the record for us.

12        THE WITNESS:  Megan Perry.

13        MS. PORTER:  Your Honor, just for your reference, I

14   provided copies of the few exhibits that we're going to

15   introduce.

16        THE COURT:  I appreciate that.

17      Whereupon,

18                SPECIAL AGENT MEGAN PERRY,

19      after having been first duly sworn, testified as follows:

20                    DIRECT EXAMINATION

21   BY MS. PORTER:

22   **Q.**   Agent Perry, what is your name?  You just stated your

23   name.  I'm sorry.

24      Where do you work?

25   **A.**   I work for the Federal Bureau of Investigation.

1   **Q.**   What is your title there?

2   **A.**   I'm a special agent.

3   **Q.**   And do you work on a particular squad?

4   **A.**   I do.  I work on the violent crimes against children

5   squad.

6   **Q.**   In front of you is what has been premarked for

7   identification purposes as Government's Exhibit 1, the

8   complaint in United States vs. Emanuel Gray.

9       Do you recognize this?

10  **A.**   I do.

11  **Q.**   Did you draft the affidavit attached?

12  **A.**   I did.

13  **Q.**   And is your signature on the front page?

14  **A.**   It is.

15  **Q.**   Do you swear that the contents of this document are true

16  and accurate?

17  **A.**   I do.

18           MS. PORTER:  Your Honor, I would like to --

19           THE DEFENDANT:  Please --

20           U.S. MARSHAL:  Hey, face forward.

21               **(There was a brief pause in the proceedings.)**

22           MS. PORTER:  Your Honor, I would like to admit

23  Government's Exhibit 1.

24               **(There was a brief pause in the proceedings.)**

25           THE COURT:  Ms. Calvert, do you want to take a

```
1    minute?  Ms. Calvert?

2              Let's take a little break.

3              MS. CALVERT:  Yes, if we could have a moment.

4              THE COURT:  And you take care of this.

5              Okay.  We're going to take just a little bit -- a

6    five-minute break.  We'll be right back.

7                   (A brief break was taken at 1:32 P.M.)

8              COURTROOM DEPUTY CLERK:  All rise.  Court is again in

9    session, the Honorable Catherine Salinas in session.

10             THE COURT:  Thank you.  You can be seated.

11             All right.  Is it correct that you guys are going to

12   waive the preliminary hearing?

13             MS. CALVERT:  Yes, Your Honor.

14             THE COURT:  Okay.  Do we -- do you still need to

15   proceed with the witness?

16             MS. PORTER:  No, Your Honor.

17             THE COURT:  Okay.  If you need her, you can always

18   call her back.

19             MS. PORTER:  Thank you.

20             THE COURT:  Ma'am, you can step down.  Thank you.

21             Well, with respect -- so, now, what we are just going

22   to deal with is the detention hearing.  I am familiar with the

23   complaint.  I have read it.  Let me just hear from you about

24   your position on detention.

25             MS. CALVERT:  Your Honor, I would ask that the Court
```

1    follow the recommendation of the pretrial services officer and

2    release Mr. Gray on the 10,000-dollar unsecured bond with his

3    mother as a cosigner.

4         Mr. Gray is 19 years old, and he has no criminal

5    history.  I understand that this is a presumption case.

6    However, there are mitigating factors, namely that the conduct

7    of the relationship with the victim started when Mr. Gray

8    himself was still a minor.  Mr. Gray has not had any direct

9    contact with the victim beyond these messages.

10        And so I believe that the Court can set conditions

11   that would protect the public, namely that he will be under

12   severe restrictions with the electronic devices as required by

13   the Adam Walsh Act and as listed in the pretrial services

14   report.

15        I have spoken to Mr. Gray about the fact that his

16   devices would be monitored or that his access would be severely

17   limited to the internet.  He understands that.  He is willing

18   to abide by it.  I have also spoken to his mother, Ms. Scott.

19   And she too understands that he would have limited access

20   and --

21             THE COURT:  He lives with his mother currently?

22             MS. CALVERT:  Yes, he does live with his mother, as

23   well as his brother and two cousins who his mother raises as

24   her own.

25             THE COURT:  How old are they?

```
1              MS. CALVERT:  They are, I believe, 19 -- there's
2     nieces -- sorry -- 23 and 25 and the nephew who is 17.  So the
3     youngest person in the house is 17 years old.
4              Your Honor, Mr. Gray is -- oh, in terms of -- so in
5     terms of danger to the community, I do think the Court can
6     impose conditions.  And, again, I'll note that there was no
7     direct contact with the victim in this case.  My understanding
8     from the complaint is that she is in another state.
9              With respect to being a flight risk, Mr. Gray has no
10    resources to flee.  He is a lifelong resident of Georgia, and
11    he lives with his mother.  He is willing -- he was working on
12    his GED and will continue to do that and will also try to
13    obtain employment, if the Court orders him.  He understands he
14    will be on electronic monitoring and is willing to abide by
15    those conditions.  So I think --
16              THE COURT:  Tell me about his mom.  What does she do?
17              MS. CALVERT:  His mother has two jobs.
18              I'm sorry.  I'm losing my voice.
19              THE COURT:  Do you need some water?
20              MS. CALVERT:  No.  It won't help.
21              His mother does have two jobs.  She -- I know one of
22    them is working in, like, trucking.  I can ask her for more
23    specifics, and she can come up here and kind of give the Court
24    her own assurances.  But she understands the allegations, loves
25    her son, and stands by him.  And she will do what the Court
```

1    orders.  I can have her come up here.

2             THE COURT:  Okay.  Let me just hear Ms. Porter's

3    position.

4             MS. CALVERT:  Sure.

5             THE COURT:  What would you think about some kind of

6    just lockdown at the mom's house with no access to any -- I

7    mean, we can put him -- I don't mind putting him on complete

8    lockdown.

9             But then he would not be -- you know, he is young.

10   He could be at home under the supervision of his mother with no

11   devices.

12            MS. PORTER:  Your Honor, I understand defense

13   counsel's suggestion.  The Government has serious concerns with

14   that.  One, the internet is everywhere.  It is not just his

15   mother living in the house.  There are multiple individuals.

16   There are multiple smart phones, multiple computers.  There's

17   the internet, and the internet is everywhere.

18            Keeping individuals off of the internet is very, very

19   difficult.  And I would like to put in a little bit of evidence

20   to explain why it is not limited to the particular victim in

21   the complaint.  But in the past two days, we have discovered

22   that his activities online were prolific and the threats were

23   prolific and not limited to the 15-year-old in the complaint.

24            THE COURT:  Have you shown those exhibits to defense

25   counsel?

1      MS. PORTER:  Yes, Your Honor.  I emailed them to her

2  earlier today, and I have provided her with copies.

3      THE COURT:  Okay.

4      MS. CALVERT:  And in terms of prolific, I'm aware of

5  two others so I think -- is my understanding from Ms. Porter.

6      MS. PORTER:  Three others.  But I'll explain what --

7  do you mind if I just go from the top of our reasoning?

8      THE COURT:  No.  Go ahead.

9      MS. PORTER:  Okay.  The weight --

10     THE COURT:  I mean, the problem is, I think, she --

11  you know, I'm going to need to hear this.

12     MS. CALVERT:  Yes.  I understand, Your Honor.

13     THE COURT:  I was trying to do it in a way where we

14  didn't have to get too specific.  But given their position,

15  we're going to have to get into some specifics --

16     MS. CALVERT:  I understand.

17     THE COURT:  -- unless you-all want to change your

18  position, which I don't think you do.

19     Okay.  Go ahead.

20     MS. PORTER:  The weight of the evidence under United

21  States Code Section 3142(g)(2) is very strong, and it justifies

22  detention in this case.

23     First, Mr. Gray admitted in a recorded interview that

24  he sent harassing messages to the female victim in Texas, and

25  he admitted that he posted sexually explicit photos of her on

1   her high school Facebook page.

2          And those photos, when she sent them to him, they

3   were unredacted.  They included her vagina, her breasts, and

4   her face.  The photos that he posted on her high school band's

5   Facebook page, he did redact her breasts.  He put dots over her

6   breasts and a music symbol over her vagina.  But her face was

7   on there.  So the school knows who it is, and that little girl

8   has been really humiliated in this case.  I'll get to that in a

9   moment.

10          As far as the strength of the evidence, his phone was

11   also seized pursuant to a search warrant.  On that phone were

12   nude images of that victim in Texas, as well as the harassing

13   texts that he sent to her.

14          Your Honor, you have before you a copy of

15   Government's Exhibit 2, which are the harassing text messages,

16   screenshots of them from the victim's phone.  On June 17, he

17   said, so are you going to take the deal or not?  And I do it

18   when school starts.  He is saying, if you don't agree to send

19   me more sexually explicit photos, I'm going to post these

20   pictures on your high school band Facebook page if you don't

21   send them to me.

22          Unfortunately, he did follow through with that

23   threat.  Those were posted, and we have screenshots of those

24   images.  I'm not putting them in because they have the child's

25   face.

1          Those text messages that you see in Government's

2    Exhibit 2 -- and, Your Honor, I would seek to admit

3    Government's Exhibit 2.

4          MS. CALVERT:  No objection.

5          THE COURT:  All right.  It is admitted.

6          MS. PORTER:  Those same text messages -- these

7    screenshots are from the victim's phone -- were found on his

8    phone as well.  So the evidence is extremely strong in this

9    case.

10         Also, the nature of the charges and defendant's

11   characteristics warrant pretrial detention under 18 United

12   States Code Section 3142(g)(1) and (3).  We've gone over

13   what -- I know you are well aware of what is in the complaint.

14   So I won't talk about that further.

15         But I do want to mention that after the FBI -- the

16   FBI seized Mr. Gray's phone on Wednesday.  They haven't had

17   enough time to review everything on the phone because there are

18   a lot of messages and chats on there.  But the FBI had time to

19   review 10 chats of approximately 184 chats under one of his Kik

20   user names.  I'm sure you are aware Kik is an app on a phone

21   that people use to communicate, send photos and videos.

22         Of those ten chats -- of just the ten that the FBI

23   reviewed, three involve Mr. Gray threatening to post sexually

24   explicit photos and videos of girls online if they refuse to

25   comply with his demand for more sexually explicit photos.  So

1  to be clear, these girls did initially voluntarily send him

2  sexually explicit photos.  But then he used those to extort

3  more of them from him.

4          And I want to turn your attention to Government's

5  Exhibit 3.  These are screenshots from chats with three of

6  those females.  The first one is one.  Second one is another.

7  Third is another.  These were very, very long.  So we have just

8  taken three that are connected.

9          In each of these, he threatens these girls.  And,

10  Your Honor, I would like to admit Government's Exhibit 3.

11          THE COURT:  It is admitted.

12          MS. PORTER:  Two of these -- if you look on the first

13  one --

14          THE COURT:  You do realize I'm a child; right?

15          MS. PORTER:  Yeah.  The person he was speaking with

16  told him, you do realize I'm a child after he threatened her.

17  And that did not deter him.  And then if we turn to Page-- the

18  third page -- actually, it might be the second page.  Oh, the

19  second page.  I'm sorry.  The second screenshot, he says to the

20  female, you not even 18.  So he knows she's not even an adult

21  either.

22          So two of the three, he has indication that they are

23  minors and he is still threatening to post these images and

24  videos on the internet for the world to see.

25          Unfortunately, we know based on that victim in Texas

1   that he's actually willing to follow through with his threats.

2   We haven't had time to follow up on these particular

3   individuals who he is speaking with and interview them yet.

4   But we do know with at least one, the victim in Texas, he did

5   post those very embarrassing images of her on her high school

6   band Facebook page.

7           And for these reasons, Your Honor, the Government's

8   position is that we simply can't protect the public by putting

9   him at his mom's house with an internet restriction because

10  everybody in that house has -- or at least several people in

11  the house have smart phones and computers and there's internet

12  in the house.

13          And if he just walked outside, there is internet --

14  you know, there is internet everywhere.  So we are really

15  concerned about this prolific nature of his threatening

16  activities.

17          And I'm also concerned about the 15-year-old in

18  Texas.  He knows who she is.  And if you look, Your Honor, at

19  Government's Exhibit 2, he threatened her on June 17th.  He

20  then a few days later posted those images to her Facebook.  And

21  then he said I'm going to do it again.  And that was in June.

22          And then he continued to threaten her until October.

23  The last one that says today, that was a screenshot taken on

24  October 30th of this year.  So our concern is just that if he

25  is out he knows who she is and he has continued to threaten her

1    after doing this very cruel act to her.

2            Hopefully, the arrest would deter him from continuing

3    to threaten her.  But the Government's concern is that the

4    conditions that defense counsel has proposed are insufficient.

5            Thank you.

6            THE COURT:  Okay.

7            MS. CALVERT:  Your Honor, I think most of our cases

8    involving crimes against a minor involve the internet, and yet

9    many of those clients are allowed to have -- to be released on

10   bond.

11           THE COURT:  I mean, that is true.  The possession of

12   child porn guys all get bond.

13           MS. CALVERT:  Right.

14           THE COURT:  This is -- this is not possession of

15   child porn.

16           MS. CALVERT:  This is not, Your Honor.  But I've

17   had -- I mean, I've had clients who showed up to meet a minor

18   still get bond and who were able to comply with the

19   restrictions on bond until they were sentenced and did well on

20   them.

21           You see that Mr. Gray is horrified to have his family

22   in here hearing about these things.  He is not trying to get

23   back out to do this again.  He is a young man.  He was not 18

24   yet when this started.  And I think that influenced his

25   thinking.

1           I do understand the Government's concern.  But at the

2   same time, with respect to those other three potential victims,

3   there is no evidence that there were postings.  And although

4   Ms. Porter pointed out that Mr. Gray may have been making

5   threats to the victim in Texas, he did not -- there is no

6   evidence that he reposted anything after that July incident.

7   And so I don't think the evidence is, you know, clearcut that

8   he's just going to continue to do this.

9           THE COURT:  All right.

10          MS. CALVERT:  I'm happy to have his mother come up

11  here if you want to --

12          THE COURT:  I don't need it.

13          So this is a presumption case, and that means that

14  there's a -- that the defendant carries the burden to come

15  forward with evidence to rebut the presumption in this case of

16  dangerousness.

17          I don't think there is any argument about flight

18  risk, as we discussed earlier.  He doesn't have any money.  We

19  know that.  He couldn't flee if he wanted to.

20          But in terms of dangerousness, he has got to come

21  forward with evidence.  And I mean, all that I feel like I've

22  heard is, you know, he could stay at his mom's and we could try

23  to limit his internet access.

24          And I have no doubt that the family would do

25  everything they could.  But I have to say I think from what

1   I've heard that he is -- he is a danger to the community.  I

2   mean -- and while it is no direct contact, as you pointed out,

3   it is pretty direct what he is accused of doing to these girls.

4   I know it is not in person.  But I'm sure that at least the

5   girl in Texas feels -- feels directly harmed and directly in

6   danger.

7           And so for that reason, I find that he has not

8   overcome -- he has not come forward with evidence to rebut the

9   presumption.  I'm going to grant the Government's motion for

10  detention.

11          Anything else we need to take up at this time?

12          MS. CALVERT:  No, Your Honor.

13          MS. PORTER:  No, Your Honor.

14          THE COURT:  We'll be in recess.

15                  **(The audio recorded proceedings were thereby**

16                  **concluded at 1:50 P.M.)**

17

18

19

20

21

22

23

24

25

```
1                  C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5

6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

7    the United States District Court, for the Northern District of

8    Georgia, Atlanta Division, do hereby certify that the foregoing

9    17 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12       In testimony whereof, I hereunto set my hand on this, the

13   5th day of February, 2019.

14

15

16

17                    _____
                      SHANNON R. WELCH, RMR, CRR
18                    OFFICIAL COURT REPORTER
                      UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```