# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL CASE** |
| v. | No. 1:18-CR-00487-SCJ-LTW |
| **EMANUEL GRAY** | |

## ORDER

This matter is before the Court on Defendant's Motion to Suppress Statements. Doc. No. [20].[1] On April 29, 2019, the Honorable Janet F. King, United States Magistrate Judge, held a hearing on the Motion. See Doc. No. [35] (hearing transcript). Defendant and the Government further briefed the issues in post-hearing filings. Doc. Nos. [70]; [73]; [76]. On July 21, 2020, Magistrate Judge Linda T. Walker[2] issued a Final Report and Recommendation ("R&R") recommending that the Motion be denied. See Doc. No. [84]. Defendant filed

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

[2] While Judge King presided over the earlier Jackson-Denno hearing, "the parties agreed that another hearing was unnecessary and that" Judge Walker could issue the R&R "based on the transcript, the evidence, and the parties' brief." Doc. No. [84], 1.

objections to the R&R on August 4, 2020. See Doc. No. [87]. The matter is now ripe for review.

## I. BACKGROUND

The R&R provides a comprehensive factual background of this matter (see Doc. No. [84], 2–6), and the Court incorporates those facts by reference. The Court thus turns to the Motion and subsequent proceedings.

### A. Motion to Suppress, Hearing, and Post-Hearing Briefing

Defendant moved to suppress statements he made to law enforcement agents on November 14, 2018. Doc. No. [20]. On May 14, 2018, Magistrate Judge King presided over a Jackson-Denno hearing regarding the Motion. Doc. No. [35]. Special Agent Megan Perry, one of the FBI agents present during the underlying events, testified at the hearing. Id. Agent Perry testified as to her and other law enforcement agents' encounter with Defendant, including the execution of a search warrant at Defendant's residence, interviews with Defendant and others residing at that residence, and discovery of hidden images on Defendant's phone. See generally id.

Defendant later filed a Post-Hearing Brief in Support of Motion to Suppress Statements. Doc. No. [70]. In that brief, Defendant argued that his

2

statements are inadmissible because they were made without receiving a Miranda[3] warning and because his statements were involuntary. Id. at 5–12. Defendant argued that the law enforcement agents interviewing him should have issued a Miranda warning because the totality of the circumstances show that he was in custody. Id. at 5–8. According to Defendant, these circumstances included the facts that (1) law enforcement agents had identified Defendant as a suspect, (2) Defendant was unable to move freely,[4] and (3) Defendant was then nineteen years old and had no prior experience with law enforcement. Id. at 7–8. Defendant also argued that his statements were involuntary because he was nineteen years old, agents never told him he had a right to remain silent, he was questioned twice, he was questioned away from the his family, and Agent Kabrhel told Defendant not to lie and made other statements indicating

---

[3] See Miranda v. Arizona, 384 U.S. 436 (1966).

[4] To support this contention, Defendant asserted that "he was separated from his family and monitored by armed officers," was "taken to a government vehicle to be questioned," had "no control over the vehicle" in which he was interviewed, "was not allowed to move around the apartment freely" once he was taken back there, and may not have been told that he could leave his residence after his interview. Doc. No. [70], pp. 7–8. Defendant also stated that "[t]here is nothing on the [interview] recording to suggest that [Defendant] was not handcuffed while he was interviewed." Id. at 7.

3

the FBI "knew a lot" about Defendant, which Defendant claims improperly influenced him to make inculpatory statements. Id. at 11–12.

The Government responded in opposition, arguing that Defendant was not in custody when he made his statements and that he did not make those statements involuntarily. Doc. No. [73], 6–16. The Government argued that, under the totality of the circumstances, a reasonable person in Defendant's position would have felt at liberty to terminate the interview, and therefore he was not in custody for Miranda purposes. See id. at 6–13. The Government cited the following factors in support: (1) Defendant was unambiguously told during the interview that he was not under arrest and was free to leave; (2) Defendant was not physically restrained or handcuffed during his interview; (3) law enforcement agents did not brandish weapons during the interview; (4) the interviews lasted only about one hour and ten minutes and then another "minute or two" and were thus not excessively long in duration; and (5) the agents questioned him in a non-coercive tone of voice and did not touch or forcefully influence him during the interview. See id. at 8–11. The Government also rejected Defendant's theory that the interview was custodial because he was separated from his residence and family and put into a law enforcement

4

vehicle, arguing that there was no physical restraint to a degree associated with formal arrest. Id. at 11–13. And in arguing that Defendant made his statements voluntarily, the Government cited many of the factors discussed above—for example, the facts that Defendant was told he was free not to answer questions and could leave, the non-coercive tone of the interviewers, and the relative brevity of the interviews—and contended that the totality of the circumstances establishes that Defendant's statements were voluntary. See id. at 14–16.

Defendant replied, arguing that facts specific to this case weigh in favor of granting the Motion. Doc. No. [76]. For example, Defendant argued that his removal from his residence negated the agents' statements that he was free to leave and not under arrest. See id. at 1. Further, Defendant argued that the setting of the first interview—inside a law enforcement vehicle—the fact that the audio recording of the first interview does not prove that Defendant was not in handcuffs, his later confinement to his living room, and the fact that he was later arrested create a totality of circumstances establishing that Defendant was in custody and should have received a Miranda warning. See id. at 1–2. Also, Defendant argued that his statements were involuntary because he was then "a teenager with no experience with law enforcement," and Agent Kabrehl

5

"took advantage of" this fact by telling Defendant he was lying and therefore being disrespectful, which caused Defendant to make inculpatory statements. Id. at 2–3.

### B.   R&R

On July 21, 2020, Judge Walker entered the R&R, recommending that Defendant's Motion be denied. Doc. No. [84]. Judge Walker found that Defendant was not entitled to a Miranda warning and that his statements were made voluntarily. Id. at 6–18. Judge Walker found that the "most important factor" was that law enforcement agents told Defendant that he was not under arrest, that he was free to leave, and that he did not have to answer their questions. Id. at 9. To overcome that factor, Judge Walker reasoned, Defendant would have to show that he was subject to restraints so extensive that the law enforcement agents' statements could not cure the custodial nature of the interview. Id. (citing United States v. Muegge, 225 F.3d 1267, 1271 (11th Cir. 2000)). Judge Walker found that Defendant failed to make this showing, noting that he failed to show that he was restrained, that the second, shorter interview inside Defendant's residence consisted of clarifying questions concerning information he had already given the agents, and that he was not in custody

6

when interviewed in his residence. Id. at 9–12. Further, Judge Walker found that Defendant's lack of experience with law enforcement and his age did not present circumstances rendering the interview custodial. Id. at 12–14.

As to the voluntariness of Defendant's statements, Judge Walker found that Defendant was not subjected to an exhaustingly long interrogation because the first interview in the vehicle lasted an hour and ten minutes and the second interview in Defendant's residence lasted two minutes. Id. at 15. Further, no one used or threatened force against Defendant or promised him anything in exchange for his statements. Id. at 16. Judge Walker also found that Agent Kabrhel's alleged admonitions of Defendant—telling Defendant that lying was disrespectful—did not render the statements involuntary. Id. at 16–17. Finally, Judge Walker found that Defendant's relative youth and inexperience with law enforcement did not render the statements involuntary. Id. at 17–18.

### C.  **Defendant's Objections**

Defendant timely objected to the R&R. Doc. No. [87]. Defendant first argues that Judge Walker erred in finding that he was not in custody and thus not entitled to a Miranda warning. Id. at 1. Specifically, Defendant argues that he was not "repeatedly" told that he was not under arrest and was free to leave,

7

and in any event other circumstances obviated any such statements made to him. Id. According to Defendant, those other circumstances are the facts that: (1) he was removed from his apartment, monitored by armed law enforcement officers, and separated from his family; (2) the interview took place in a law enforcement vehicle; (3) he was later "restricted to the living room." Id. at 1–2.

Defendant also objects to Judge Walker's finding that the interview in the living room consisted of "clarifying questions," arguing that this second interview involved Defendant showing agents how to find hidden images on his phone, a matter that Defendant "did not explain" during the first interview. See id. at 2. Defendant further argues that Judge Walker erred in finding that he was not in custody when interviewed in his living room because he was at that point not free to move around his residence. Id. Defendant also disagrees with Judge Walker's conclusion that his inexperience with law enforcement and his age did not render the interview custodial. Id. at 2–3.

Moreover, Defendant objects to Judge Walker's finding that Defendant's statements were voluntary. Id. at 3–4. Defendant concedes that he was not threatened, but he argues that Agent Kabrehl's implications that Defendant was lying were coercive and thus rendered the statements involuntary. Id.

8

The Government did not respond to Defendant's objections. This matter is ripe for review, and the Court rules as follows.

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a *de novo* review of those portions of the R&R to which Defendant has timely and specifically objected. The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667 (1980). The district judge must "read the transcript of the hearing before a magistrate on a motion to suppress, before adopting the magistrate's recommendation." United States v. Elsoffer, 644 F.2d 357, 358 (5th Cir. 1981) (per curiam).[5]

For a party's objections to warrant *de novo* review, he "must clearly advise the district court and pinpoint the specific findings that [he] disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). The Eleventh Circuit has noted that "[p]arties filing objections to a magistrate's report and recommendation must specifically identify those findings objected

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). The remainder of the R&R, to which neither party offers specific objections, will be assessed for clear error only. See Tauber v. Barnhart, 438 F.Supp.2d 1366, 1373 (N.D. Ga. 2006) ("[I]ssues upon which no specific objections are raised do not so require *de novo* review; the district court may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

### III.  ANALYSIS

After having reviewed the parties' briefing, the transcript of the Jackson-Denno hearing, and the R&R, the Court finds that the R&R is due to be adopted in its entirety. First, the Court turns to Defendant's objections to Judge Walker's conclusions that he was not entitled to a Miranda warning. As stated by the parties and in the R&R, the determination of whether a defendant is in custody for Miranda purposes hinges on whether a reasonable person would have felt free to terminate the interrogation and leave, which is considered under the totality of the circumstances. Yarborough v. Alvarado, 541 U.S. 652, 653 (2004);

United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006). Defendant's objections do not persuade this Court that Judge Walker was incorrect in finding that he was not in custody when he was interviewed.

First, Defendant objects to Judge Walker's characterization that he was told "repeatedly" that he was not under arrest and was free to leave. Doc. No. [87], 1. Regardless of how many times agents made these statements, however, Defendant does not appear to contest that the agents made these statements unambiguously, a fact that "is a powerful factor" in considering whether a defendant was in custody. Brown, 441 F.3d at 1347. Defendant attempts to avoid that powerful factor by arguing that other acts undermined the agents' statements. See Doc. No. [87], 1–3. The Court finds Defendant's various spatial arguments to that effect unavailing. The fact that Defendant, then an adult, was separated from his family and initially prevented from reentering his residence does not mean that he was in custody for Miranda purposes because even if he was temporarily seized during the law enforcement sweep of the residence, the Court cannot find that he was restrained to a degree associated with formal arrest. United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010); United States v. Street, 472 F.3d 1298, 1310 (11th Cir. 2006). Moreover, after the sweep

was completed, Defendant was told he was free to leave and not speak with law enforcement. Doc. No. [35], 5:17–8:18. And given the agents' unambiguous statement that Defendant was free to leave, the fact that the first interview took place in a law enforcement vehicle did not mean that Defendant was in custody. See Davis v. Jones, 441 F. Supp. 2d 1138, 1208 (M.D. Ala. 2006) (finding that an individual was not in custody when he was seated in the back of a patrol car when not physically restrained, when he could have left the vehicle, and when the vehicle was parked in a location familiar to the defendant); see also United States v. Bordeaux, 400 F.3d 548, 558 (8th Cir. 2005) (holding that a defendant was not "in custody" when he was interviewed by law enforcement officers in a parked police vehicle which was unmarked and unlocked and he had been told that he could end the interview at any time); United States v. Crews, No. 3:13-CR-230-J-34MCR, 2014 WL 5690448, at *6 (M.D. Fla. Nov. 4, 2014) ("Here, the interview took place in an unmarked, unlocked government vehicle that was parked on the grass beside Defendant's residence, which weighs in favor of a finding that Defendant was not in custody."); United States v. Dix, No. 3:12–cr–7–TCB–RGV, 2013 WL 610219, at *6 (N.D. Ga. Jan. 29, 2013) (finding that a defendant was not in custody when law enforcement officers entered his

store with weapons drawn to execute search warrant, handcuffed the defendant, and escorted defendant outside where he was un-handcuffed and then interviewed by two agents in an unmarked government truck for an hour and a half, during which time he was told he could leave). Following the reasoning and cases cited above, the Court also cannot find that Defendant was in custody simply because he was later restricted to his living room.[6]

As to Defendant's age and inexperience, even assuming those factors can be relevant to the present analysis, cf. J.D.B. v. North Carolina, 564 U.S. 261, 277 (2011), the Court finds that these factors would not alter the outcome here—Defendant was an adult, and agents told that adult that he was not under arrest and was free to leave. The Court finds that Defendant was not in custody.

Defendant also objects to Judge Walker's conclusion that his statements were voluntary. Doc. No. [87], 3–4. The Court disagrees with Defendant that Agent Kabrhel forced Defendant to make incriminating statements. First, as Judge Walker noted, the fact that Defendant was not in custody when he made

---

[6] Because the Court finds that Defendant was not in custody when in his living room, the Court need not discuss in great depth whether the second interview consisted of only "clarifying questions," although the Court does note that the record shows that the issue of hidden images in Defendant's cell phone arose during the initial interview. See, e.g., Doc. No. [35], 15:19–25.

the incriminating statements weighs against finding that those statements were involuntary. See J.D.B., 564 U.S. at 268–69. And in light of the totality of the circumstances—including that the interviews were not exhaustingly long and that the agents did not threaten Defendant—the Court cannot find that Defendant made the statements involuntarily.

Defendant also attempts to differentiate being admonished to tell the truth and being told that he was lying, but the Court finds that Agent Kabrhel's statements amount to an admonishment to tell the truth; and in any event, even if Agent Kabrhel did imply that Defendant was lying, his statements did not rise to the requisite level of coerciveness to render Defendant's statements involuntary. See United States v. Hipp, 644 F. App'x 943, 947 (11th Cir. 2016) (stating that an admonition to tell the truth does not render a statement involuntary); United States v. Lux, 905 F.2d 1379, 1382 (10th Cir. 1990) (affirming the trial court's finding that pounding a fist on the table while accusing a defendant of lying does not negate voluntariness). And for the reasons discussed above, the Court does not find that Defendant's age and lack of experience with law enforcement rendered his statements involuntary. Thus, the Court finds that Defendant's statements were voluntary.

14

## IV.   CONCLUSION

For the foregoing reasons, the R&R (Doc. No [84]) is **ADOPTED** in its entirety. Defendant's objections (Doc. No. [87]) are **OVERRULED**. Defendant's Motion to Suppress Statements (Doc. No. [20]) is **DENIED**.

**IT IS SO ORDERED** this 24th day of May, 2021.

                                        s/Steve C. Jones
                                   **HONORABLE STEVE C. JONES**
                                   **UNITED STATES DISTRICT JUDGE**