IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EMANUEL GRAY | CRIMINAL ACTION NO.<br>1:18-CR-487-SCJ-LTW-1 |

## SENTENCING MEMORANDUM

COMES NOW the Defendant, EMANUEL GRAY, by and through undersigned counsel, and hereby files this Sentencing Memorandum in support of his request that the Court impose the mandatory minimum sentence of 15 years of imprisonment.

### Background

In July, a jury found Mr. Gray guilty of two counts of production and attempted production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), two counts of cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). The Presentence Report calculates an advisory guideline range of Life and a mandatory minimum sentence of 15 years. In light of the factors set forth in 18 U.S.C. § 3553(a), which will be addressed below, Mr. Gray requests the mandatory minimum sentence.

## Argument

The Supreme Court has made it clear that there is no presumption of reasonableness of a within the guideline range sentence by a sentencing court. *Rita v. United States*, 551 U.S. 338 (2007). Instead, the sentencing court must appropriately apply the § 3553 factors listed below:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed educational or vocational training or medical care;
> (3) the kinds of sentences available;
> (4) the Sentencing Guidelines range;
> (5) pertinent policy statements of the Sentencing Commission;
> (6) the need to avoid unwarranted sentencing disparities;
> (7) and the need to provide restitution to victims.

*See* 18 U.S.C. § 3553(a)(1)-(7). Section 3553(a) embodies a crucial parsimony principle, directing courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2). *See United States v. Booker*, 543 U.S. 220, 259-60 (2005). Therefore, the Court should start with the minimum sentence permissible and add only so much additional punishment, if any, as necessary to comply with § 3553(a)'s purposes.

Here, there is no need for punishment beyond the 15-year mandatory minimum sentence. Mr. Gray was 19 years old at the time of the offenses. He was still living at home with his mother, brother, and cousins. He did not have a job and was not going to school. His mother provided everything for him, including the two phones that were used to communicate with C.W. and S.S. In essence, Mr. Gray was living the life of a teenager. Additionally, Mr. Gray acted younger than his age. In his messages and posts, he joked about what he had done and did not appear to appreciate the seriousness of his actions. During the interview on the day of his arrest, Mr. Gray admitted some of the conduct and expressed remorse; but he also asked if he could get his phone back so that he could access the open Internet tabs and see his bookmarks for anime and Manga.[1] Clearly, Mr. Gray did not understand the gravity of the agents seizing his phones or foresee that he could spend years in prison. Mr. Gray's behavior is due in part to the fact that his intellectual functioning is in the borderline impaired range and that his academic functioning is at the 4th grade level (9 or 10 years old). Another factor is that he does not have any real friends to socially interact with. Indeed, Mr. Gray's sister wrote, "Family and friends joked and bullied him about being a certain age but being so far behind mentally and emotionally." (Ex. 1 – Kendra Gray Letter). Thus, Mr. Gray turned to online messaging to fill the void. He created a different

---

[1] Manga are comics or graphic novels originating from Japan.

3

persona from the Emanuel his family knows.  Rather than being the victim of bullying, he became the bully.  Against the backdrop of Mr. Gray's immaturity, a 15-year sentence is more than reasonable to punish him.

The Court can also consider Mr. Gray's family and the support that they will give him in considering whether more than 15 years of incarceration is warranted. When Mr. Gray was just a baby, his father was sent to prison to serve a 30-year sentence for selling drugs.  Mr. Gray's mother, Belinda Scott, married Mr. Gray's father and would take Mr. Gray and his two siblings to the prison twice a month so that they could see their father.  Mr. Gray's father was not released until 2017, which did not give them much time to form a relationship before Mr. Gray was arrested the following year.  For his entire life, Ms. Scott has played the role of mother and father, and that role has extended beyond Mr. Gray and his siblings. Throughout the years, Ms. Scott has opened her home to six of Mr. Gray's cousins, including one who was born with crack cocaine in his system, and another born with fetal alcohol syndrome.  Ms. Scott worked long hours to provide for everyone and as a result, could not spend much time with Mr. Gray.  She recalled that he would act out in order to get attention.  Mr. Gray also struggled in school due to learning difficulties and bullying from peers.  Ms. Scott tried to find the right school for Mr. Gray, but he eventually dropped out in the 10th grade.  Mr. Gray hoped to enroll in the military, and had even completed a course at the Georgia

National Guard Youth Challenge Academy, but was unable to pass the GED test so that he could enlist.  Given the hope that Ms. Scott had for her youngest child, Mr. Gray's arrest and prosecution have been devastating.  She knows her son as a kind-hearted person who likes to make her laugh.  She is also heartbroken because she knows that Mr. Gray truly does not understand the situation that he is in and is mentally much younger than his true age.  No matter what happens, Ms. Scott will be there for her son.  She visited Mr. Gray at the jail weekly until the Covid-19 pandemic stopped all visitation and always speaks to him regularly.  She has attended all of his court appearances and would like to address the Court at the sentencing.  Ms. Scott will continue to support Mr. Gray while he is incarcerated and hopes that she will still be around when he is released so that can he live with her.  In sum, Mr. Gray's family circumstances weigh in favor of a sentence that will allow him to be released while his mother is still able to support him.

The goals of sentencing will also be met with a sentence of 15 years.  Mr. Gray has never been in any trouble before; thus, there is no need for a sentence above the mandatory minimum to punish or deter him.  His offenses did not involve any physical contact with anyone; therefore, he does not pose a risk to people in the community.  Although the Court may have concerns about Mr. Gray's access to the internet, the conditions of supervised release for sex offenders will serve as a check on his computer usage.  In terms of training, a 15-year

sentence will give Mr. Gray ample time to get his GED and to learn a trade. While he has been incarcerated, Mr. Gray has enrolled in correspondence courses, participated in Bible Study, and been recognized for being an outstanding orderly. Since his arrest three years ago, Mr. Gray's sister has seen what she describes as "a major shift in my brother towards being an even better person than he was before." (Ex. 1). Given these factors, the goals of sentencing will certainly be met with the mandatory minimum sentence.

    Mr. Gray's advisory guideline range of Life is higher than the 15-year sentence he is requesting. However, it is common for the guideline range to be Life in these kinds of cases and for the sentences imposed in these cases to vary widely. Therefore, the guideline range is not helpful for determining a reasonable sentence. However, it is notable that Mr. Gray did not receive many of the specific offense characteristics that are typical in these cases, including commission of a sexual act or sexual contact, possession of material portraying sadistic or masochistic conduct or infants or toddlers, or the increase for having at least 600 images. In terms of the offense conduct, C.W. and S.S. used their phones to produce the images; Mr. Gray was not in the room with them and never had any physical contact with them. Both C.W. and S.S. admitted to sending images of themselves to other people. C.W. testified that she initially sent images to Mr. Gray willingly and S.S. did not know who was she was sending images to. The

most disturbing factor about this case is not the actual images and videos, but the fact that images were posted (or almost posted). Yet, even this is not as aggravating as it could be because C.W.'s and S.S.'s private parts were covered. There is no doubt that the distribution of the altered images caused embarrassment, but the guideline range for the cyberstalking conduct is 33-41 months, which even with an adjustment for multiple counts, is still much lower than the 15-year sentence Mr. Gray is requesting. Finally, as to the images and videos C.W. and S.S. sent, it is also significant that Mr. Gray did not distribute them to anyone else, either to sell them or to trade them for other images. Given these mitigating factors, a 15-year sentence is reasonable. In sum, all of the § 3553(a) factors[2] weigh in favor of Mr. Gray's requested sentence.

## Conclusion

Mr. Gray is not a dangerous predator. He is a young man who did not think about the consequences of his actions and in doing so, caused emotional pain and embarrassment to two teenage girls. However, Mr. Gray does not deserve a sentence of Life. Instead, he asks that the Court impose 15 years of imprisonment and give him the opportunity for a second chance at life.

---

[2] It does not appear that restitution is a factor in this case. Nor are there any pertinent policy statements.

Dated:   This 3rd day of November, 2021.

>*/s/ Victoria M. Calvert*
>
>VICTORIA M. CALVERT
>GEORGIA BAR NO. 636029
>
>*/s/ Allison Dawson*
>ALLISON DAWSON
>GEORGIA BAR NO. 171940
>
>ATTORNEYS FOR MR. GRAY